**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert SHELLI, Defendant-Appellant.**

No. 45952.

Missouri Court of Appeals,
Eastern District,
Division One.

June 5, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 8, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 18, 1984.
Application to Transfer Denied
Nov. 20, 1984.

Frank Eric Rathbone, C. John Pleban, St. Louis, for defendant-appellant.

Thomas W. Dietrich, Clarksville, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Robert Shelli appeals jury trial conviction and five year sentence for possession of more than thirty-five grams of marijuana. § 195.020, 195.200, RSMo 1978. We affirm.

■ In his first point, defendant claims that the trial court erred in overruling his motion to suppress the four sacks of vegetable substance seized at the time of his arrest for the reasons that (a) the law enforcement officers did not have "reasonable suspicion" to stop his automobile, and (b) the officers' actions upon stopping him went "beyond the scope of action permissible during an investigative stop."

When the evidence was offered at trial, defense counsel renewed his pre-trial objections by reference to his motion to suppress. Although the judge who presided over the trial was not the same judge who heard the evidence on the pre-trial motion, we focus primarily on the transcript of the hearing on the motion to determine whether the admission of the evidence was error. *State v. Hummel*, 652 S.W.2d 749, 750 (Mo.App.1983); *State v. Brueckner*, 617 S.W.2d 405, 409 (Mo.App.1981).

The evidence at that hearing showed that on September 15, 1981, Pike County Deputy Sheriff Robert Brody received a telephone call from a man who identified himself as Mr. Whiteaker. Whiteaker stated that two persons were at the Ashburn, Missouri, landing loading sacks of what he believed to be marijuana into their car. Mr. Whiteaker described the car as a white over brown Chevrolet Nova, with a canoe tied to the top of it. He stated that the license number of the car was BEJ–665. After receiving the call, Deputy Brody contacted Highway Patrolman Ronald Moorman and provided him with the same information. Moorman and Brody then proceeded north on Highway 79 toward Ashburn in separate cars.

On their way to Ashburn, the officers sighted a car matching the description given by Whiteaker driving south on Highway 79. Defendant and Lewis Meyers were in the car, with defendant driving. The officers turned, and Trooper Moorman stopped defendant's car. Moorman testified that he smelled the odor of freshly cut marijuana after defendant exited his car. Moorman was joined by Deputy Brody, whereupon they asked defendant for some identification. Brody looked into defendant's vehicle and saw what he thought were several marijuana seeds on the front seat and bags containing stems and leafy vegetable material on the floor in front of the back seat. They were visible from outside the car. He believed the material to be marijuana. Moorman observed the same items and concluded the material was marijuana. This occurred at approximately 6:00 p.m., and there was adequate natural light. Defendant and Meyers were then placed under arrest and the officers seized the three gunny sacks and one plastic bag from the back seat of the automobile. Brody took possession of the sacks and gave them to Deputy Art Fox. Fox locked the sacks in a room in the basement of the sheriff's office.

■ We note initially that a police officer may stop persons briefly for investigatory purposes where the officer has a rea-

sonable suspicion that criminal activity is underway. Such "reasonable suspicion" need not be as strong as the "probable cause" required to justify an arrest. *State v. Lasley*, 583 S.W.2d 511, 518 (Mo. banc 1979). An informant's tip is adequate to create the "reasonable suspicion" for an investigatory stop, *State v. Mitchell*, 615 S.W.2d 446, 449 (Mo.App.1981), and it is of no moment that Whiteaker's previous reliability as an informant was not shown. Previous reliability of an informant is not a prerequisite necessary to establish probable cause for arrest, *State v. Russ*, 642 S.W.2d 706, 708 (Mo.App.1982); nor, *a fortiori*, to establish "reasonable suspicion" for an investigatory stop. Given that the car, exactly as described by the informant, was sighted by the officers shortly after the call and that it was departing the area where it was reported to have been when the call was made, the stop was justified. Thereafter, the seizure of the clearly visible material by the officers, both experienced in visually identifying marijuana, was authorized by the plain view doctrine. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

The trial court did not err in denying the motion to suppress.

■ Next, defendant contends that the state failed to make a submissible case for failure to prove the material seized was marijuana and, if so, that the quantity exceeded thirty-five grams. Forensic chemist Kevin F. Krautman testified that he and Deputy Sheriff Art Fox took a random sampling of the plant materials from the bags. After outlining his qualifications for determining whether a particular substance is marijuana, Mr. Krautman testified that he performed a microscopic examination of the samples, a Duquenois-Levine test, and a thin layer chromotography test, and that all three tests indicated that the substance was marijuana. He also stated that the sample selected was "homogenous" meaning, in his words, "one and the same or consistently the same thing," that he weighed the sample and determined its weight to be 80.4 grams. He also stated

that the sample did not include any of the parts of the marijuana plant or other materials declared not to be marijuana by § 195.010(20), RSMo 1978. This evidence made a submissible case for the jury, notwithstanding defendant's evidence to the effect that any of the tests alone would be inconclusive. Absent a clear abuse of discretion, the trial court's determination of an expert's qualifications will not be disturbed on appeal. *State v. Neal*, 624 S.W.2d 182, 183 (Mo.App.1981). Similarly, it is not the function of this Court to determine the credibility of witnesses or to weigh the evidence. *State v. Williams*, 600 S.W.2d 120, 122 (Mo.App.1980). We rule the point against defendant.

■ In his final point, defendant contends that the trial court erred in admitting the four sacks of marijuana into evidence because a chain of custody was not established. As indicated above, Deputy Sheriff Brody testified that, after the seizure, he delivered the sacks to Deputy Sheriff Fox. In turn, Fox testified that he stored them in a locked room in the basement of the sheriff's office, where they remained under Fox's supervision. Fox was with Krautman when the samples were removed for analysis. Defendant claims, however, that he conclusively showed the chain of custody to have been severed through the testimony of a former inmate-trustee of the jail and a lawyer who had visited a client at the sheriff's office. The inmate testified that he had seen the sacks "a couple" of times by looking through the open door of the storage room. The lawyer testified that on one occasion he had interviewed his client in a room which might have been the room where the marijuana was stored and that the door to the room was not locked.

Whether a proper chain of custody has been established so as to allow the admission of physical evidence is determined by the trial court. *State v. Roper*, 591 S.W.2d 58, 61 (Mo.App.1979). In arriving at such a determination in this case, the trial court was free to believe or disbelieve the defendant's witnesses who testified, in effect, that the storage room was not locked at all

times. Accepting the testimony as true, the trial court could accord it such weight and effect as it deemed appropriate.

 In order for a proper chain of custody to be established in a case of this nature, it is not necessary that the state's evidence rule out "every possibility of disturbed possession." *State v. Ashley*, 616 S.W.2d 556, 561 (Mo.App.1981). The purpose of the chain of custody requirement is to show the thing placed in evidence at the trial is in the same condition as it was when it was first obtained. For this purpose to be fulfilled, it is not necessary "to exclude every possibility of alteration or tampering, nor need [the state] show that some credible witness retained the exhibit in his personal possession under constant watch." *State v. Robinson*, 595 S.W.2d 9, 12 (Mo. App.1979). Accordingly, we find no error in the admission into evidence of the sacks of marijuana.

The judgment is affirmed.

SIMON, P.J., and KAROHL, J., concurs.